*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0074P (6th Cir.)
File Name: 00a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PATRICIA SCOTT,
  *Plaintiff-Appellee,*

  *v.*

CLAY COUNTY, TENNESSEE;
CHINN ANDERSON; BILLY
PIERCE; MICHAEL THOMPSON,
  *Defendants-Appellants.*

No. 98-6157

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 95-00095—Thomas A. Wiseman, Jr., District Judge.

Argued: August 10, 1999

Decided and Filed: March 1, 2000

Before: KRUPANSKY, BOGGS, and CLAY, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Michael E. Evans, EVANS, TODD & FLOYD,
Nashville, Tennessee, for Appellants. Richard M. Brooks,
Carthage, Tennessee, for Appellee. **ON BRIEF:** Michael E.
Evans, EVANS, TODD & FLOYD, Nashville, Tennessee, for

1

Appellants.  Richard M. Brooks, Carthage, Tennessee, for Appellee.

KRUPANSKY, J., delivered the opinion of the court, in which BOGGS, J., joined.  CLAY, J. (pp. 21-23), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KRUPANSKY, Circuit Judge.  The defendants-appellants Clay County, Tennessee ("the County"), Sheriff Cecil "Chinn" Anderson ("Anderson"), Deputy Billy Pierce ("Pierce"), and Deputy Michael Thompson ("Thompson") have contested the district court's denial of their motion, anchored in qualified immunity, for Fed. R. Civ. P. 56 summary adjudication of the federal civil rights claims of the plaintiff-appellee Patricia Scott ("Patricia" or "the plaintiff"). The plaintiff  alleged in her single-count complaint that Clay County Sheriff's Department officers Anderson, Pierce, and Thompson  used  excessive  force  to  effect  her  arrest,  in violation of 42 U.S.C. §§ 1983 and 1988,[1] which caused her

———————————

[1]Section 1983 provides, in pertinent segment:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

    In any action under section 1983, the plaintiff must prove that (1) he or she has been deprived of a right secured by the United States constitution or laws, (2) the defendants who allegedly caused that deprivation acted under color of state law, and (3) the deprivation occurred without due process of law.  *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994).

The majority asserts that because Plaintiff has argued violations of her rights under the Fourth Amendment and not the violation of her substantive due process rights under the Fourteenth Amendment, the lesser standard of "objective unreasonableness" should apply.  The granting of summary judgment under the circumstances of this case is improper regardless of whether the standard that should be applied in evaluating the officers' conduct is the "conscience shocking" standard of the Fourteenth Amendment, *see County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1717 (1998), or the lesser standard of "objective unreasonableness" of the Fourth Amendment. *See Garner*, 471 U.S. at 16-17; *see also Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).  Regardless of the appropriate standard, Defendants do not dispute, as made clear by the district court's opinion, that Plaintiff's right to be free from excessive force under the Fourth Amendment was a clearly established right at the time of the incident in question.  The question that should have been left for trial was whether excessive force was actually employed against Plaintiff.

This Circuit's unfortunate practice of arrogating unto itself the role of resolving on appeal the factual disputes presented by a qualified immunity defense in a § 1983 action, as represented by the majority opinion herein, continues the troubling trend followed by this Court in the improperly decided case of *Claybrook v. Birchwell*.  *See* 199 F.3d at 358-61 (affirming the district court's order granting summary judgment to the defendants on Counts III and IV of the plaintiffs' complaint).  I therefore dissent.

subsequently occurred during the chase and the shooting; whether the deputies observed Plaintiff riding as a passenger in the vehicle and fired at her, or for that matter, whether the officers observed both the driver and the passenger and fired at both of them in disregard for the rights and safety of Plaintiff; and whether excessive force was used against Plaintiff by shooting at her and effectuating a "seizure" of her person for purposes of the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 16-17 (1985).

As indicated by the district court's opinion in this matter, the officers were in touch with one another by radio throughout the chase and the shooting. Rather than resolve all of the inferences that could be drawn from the contested facts and circumstances in favor of Plaintiff, as the Court is required to do on a motion for summary judgment, the majority has improperly undertaken in its opinion to resolve against Plaintiff all the issues of whether Defendants acted with excessive force and violated Plaintiff's clearly established rights. In so doing, the majority has also resolved against Plaintiff the issues of whether Defendants observed or had reason to know that excessive force would be or was about to be employed, or whether Defendants had the opportunity and means to prevent the harm to Plaintiff. Again, those issues should have been left for resolution at trial.

This Plaintiff, who suffered grievous personal injury and harm in the incident which is the subject of this litigation, should have been permitted to subject the officers' testimony to the truth seeking device of cross-examination at trial, and should have been afforded the opportunity to present direct and circumstantial evidence from which Plaintiff could argue to the court and jury that her clearly established constitutional rights were violated by what constituted, under the circumstances, the officers' excessive use of force for which one or more of Defendants were not entitled to the benefits of qualified immunity.

serious bodily injury. She further contended that the County, and Anderson as County Sheriff, failed to properly train and/or supervise the defendant deputies, and failed to develop and implement appropriate official departmental policy restraints against the unjustifiable exertion of potentially lethal force, thus violating constitutional rights redressible by § 1983. Patricia also asserted pendent state law claims.

Although witness unanimity is absent regarding various factual details, the essential controlling material facts of this case are not in substantial dispute.[2] During the late evening of April 28 and early morning of April 29, 1995, Patricia Scott had been a willing passenger in her own automobile, a four-door 1978 Chevrolet Caprice, traveling on the dark country roadways of Clay County. She had permitted her ex-husband, Robert Scott ("Robert"), to drive the vehicle. Moments earlier, her former spouse had retrieved her from a nearby narcotics den known locally as "Chet's."[3] Patricia

---

Section 1988, *inter alia*, authorizes the court, in its discretion, to award attorney fees to certain prevailing parties in section 1983 cases.

[2]In accordance with long standing summary judgment norms, this reviewing court has construed the record evidence most favorably for the plaintiff Patricia Scott as the litigant opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (citation omitted). *See also Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994). For purposes of this appeal, the defendants-appellants either have relied upon facts which were conceded by the plaintiff-appellee or were proved beyond dispute; or have adopted the plaintiff's version of contested material facts, as articulated via her written response to the defendants' Statement of Material Fact Not in Dispute filed in support of their summary judgment motion.

[3]Both Scotts had a history of cocaine abuse, although Robert asserted that he had been attempting to overcome his cocaine dependency.

knew that her activities at the drug house had infuriated Robert; he testified that he "was probably the maddest I ever was in my life." Moreover, Patricia knew that Robert had proximately ingested a significant volume of alcohol coupled with additional psychoactive substances;[4] possessed no valid motor vehicle operator's permit because his license had been judicially revoked pursuant to his conviction for driving while intoxicated; and had, in the past, recklessly fled from law enforcement authorities at high speeds. Forthwith, the emotionally agitated, and chemically impaired, couple engaged in a passionate argument inside the moving vehicle.

Flouting a traffic sign, Robert failed to stop at the intersection of Neely's Creek Road and Highway 53. Sheriff's Deputy Michael Thompson, on routine highway patrol, observed the Scott vehicle race erratically through that intersection with its tires squealing, then momentarily weave off the pavement as it recklessly turned, at a hazardous velocity, onto Walker Ridge Road. Thompson, concerned for public safety, commenced tailing that motorcar.

The speed of the Scott automobile dangerously rose while on Walker Ridge Road, rocketing past, and narrowly missing, Sheriff Chinn Anderson's unmarked service cruiser which he had parked near the roadside, as well as the sheriff himself, who had been sitting nearby. In response, Thompson, with his vehicle's siren sounding and blue lights flashing, pursued the Caprice at high speed.[5] Because he lacked a valid driver's license, Robert intended to evade apprehension by fleeing to his mother's residence. An experienced "road runner," Robert had successfully eluded the police in past high-speed

---

[4] Robert testified that he had recently consumed between five and seven beers, in tandem with prescription pharmaceuticals including "nerve medicine" and "muscle relaxants," which had produced a drug-induced mood alteration.

[5] At deposition, Thompson could not recall whether he activated his unit's siren and lights shortly before, or momentarily after, the Scott vehicle sped perilously close to the sheriff and his vehicle.

---

### DISSENT

---

CLAY, Circuit Judge, dissenting. I respectfully dissent for the reasons set out in the district court's well-reasoned and persuasive opinion denying Defendants' motion for summary judgment. I believe the district court was correct in finding that Defendants are not immune from suit.

Contrary to the representations of the majority opinion, this is a case in which factual disputes, which should preclude the granting of summary judgment, abound. In my opinion, the majority, contrary to the well-established dictates of law governing the granting of summary judgment, can only arrive at its conclusion that there are no factual disputes by deciding all of the contested issues of fact against Plaintiff. Not only does the majority opinion assert disputed facts to constitute undisputed facts, but in its anxiousness to deny Plaintiff her day in court, the majority reaches some of its factual conclusions by stating, as objectively established facts, what the majority supposes was in the minds of the deputies at the time of the events surrounding the shooting. The deputies' explanation for their conduct, much of which could be viewed in the context of the factual circumstances to constitute after the fact speculation about the motivation of the officers, is asserted as uncontrovertibly true by the majority. Such determinations would best be left to the finder of fact at the time of trial.

Plaintiff and the officers have described vastly conflicting versions of what occurred on the evening of April 28, 1995. What is missing from the one-sided account of the events described by the majority opinion is any consideration of Plaintiff's allegations or version of the events. This case presents questions of whether the deputies acted reasonably in pursuing an individual who had allegedly initially committed a minor traffic violation; whether the deputies embellished or exaggerated their version of the events which

appellant Clay County, further directs that the plaintiff's federal claims against it shall be dismissed.[22] *See Brennan v. Township of Northville*, 78 F.3d 1152, 1157-58 (6th Cir. 1996).

Finally, following remand, the district court shall initially determine, in its sound discretion, whether to dismiss the plaintiff's remaining state law claims without prejudice, or to exercise supplemental federal jurisdiction over them. 28 U.S.C. § 1367(a) & (c)(3); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 348-50 (1988); *Rosado v. Wyman*, 397 U.S. 397, 403-05 (1970); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

This reviewing court has carefully considered each argument submitted by the plaintiff, but finds none persuasive, either individually or collectively. Accordingly, the district court's order of July 28, 1998 denying qualified immunity to defendants Anderson, Pierce, and Thompson is **REVERSED**. All claims against all defendants anchored in 42 U.S.C. §§ 1983 and 1988 are **DISMISSED WITH PREJUDICE**. This case is **REMANDED** to the district court for such necessary further orders and proceedings as are consistent with this opinion, including disposition of the plaintiff's pendent state law claims.

---

[22]Even if this review had declined to exercise its discretionary pendent party jurisdiction over the County, its ruling that none of the three individual defendants had violated any constitutional right of the plaintiff would constitute the law of the case which, under the mandate rule, would compel the district court, following remand, also to dismiss the federal claims against the County. *See* 28 U.S.C. § 2106; *Vendo Co. v. Lektro-Vend Corp.*, 434 U.S. 425, 427-28 (1978); *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994); *In re General Motors Corp.*, 3 F.3d 980, 984 n. 2 (6th Cir. 1993); *Guidry v. Sheet Metal Wkrs. Intern. Ass'n*, 10 F.3d 700, 705-06 (10th Cir. 1993); *Piambino v. Bailey*, 757 F.2d 1112, 1119-20 (11th Cir. 1985).

chases. Robert conceded that, during his ensuing flight, he forced at least one fellow motorist off the roadway, and that he "might have been across the yellow line or could have been sliding across the yellow line," which conduct patently risked the physical safety of civilian motorists and pedestrians, pursuing patrolmen, Robert's passenger, and himself.

Patrol cruisers driven by Anderson and Deputy Sheriff Billy Pierce momentarily joined Deputy Thompson's pursuit of the speeding Chevrolet. After the three sheriff's office units had chased the Scott car for over twenty minutes, at speeds ranging between 85 to 100 miles per hour, Robert lost control of his vehicle while attempting a sharp turn at 75 to 80 miles per hour. The Caprice skidded for several hundred feet, glided off the thoroughfare, and crashed into a roadside guard rail, which brought the fugitive vehicle to an abrupt halt.

Deputy Pierce, whose patrol vehicle had led the erstwhile chase, initially reached the immobilized motorcar. At some point, a collision transpired between the Scott automobile and Pierce's departmental vehicle; Robert asserted that Pierce's car struck the stationary Caprice from the rear, whereas Pierce posited that Robert backed the Caprice into his squad cruiser after he (Pierce) had exited it. In any event, no dispute exists that Deputy Pierce parked and exited his patrol car, produced his sixteen-round, nine-millimeter Ruger service arm, and cautiously moved toward the now-stationary Chevrolet. Suddenly, the Chevrolet rapidly accelerated forward, compelling Pierce to leap out of its path in self-defense. Then, in an apparent bid by its driver to return to the highway, the Caprice proceeded directly towards Deputy Thompson's approaching vehicle. Robert recalled that, although he had observed at least one firearm-toting deputy approaching the Caprice, and knew that additional armed law enforcement officers were approaching, he nevertheless intended to escape by driving in the direction from which the supporting units would be arriving.

At the moment that the Chevrolet was racing once again onto the public motorway, Deputy Pierce believed that its

operator had earlier tried to run down Sheriff Anderson,[6] had attempted to drive over him (Pierce) only moments previously, and posed a grave immediate menace to the lives and limbs of his approaching colleagues as well as innocent highway travelers. The plaintiff has not contested Pierce's avowal that he did not know that a passenger was also inside the vehicle. Confronted with a momentous, split-second, life-or-death decision, defendant Pierce initially reacted by firing five bullets towards the Chevrolet's driver;[7] he then discharged an additional four rounds at that vehicle's tires, causing it to skid to a stop for the second, and final, time. Pierce's hail of bullets had failed to injure the driver, Robert Scott. Unfortunately, however, two of his shots had inadvertently struck plaintiff Patricia Scott, whose presence as a passenger was unknown to Pierce.

Immediately following the Chevrolet's incapacitation, additional officers, including Anderson and Thompson, arrived at the scene. Robert and Patricia were then removed from the vehicle and manacled. However, instantly upon perceiving that Patricia had been wounded, they radioed for

---

[6] Pierce had learned of Robert's near collision with Anderson via radio transmissions from Anderson and Thompson. The three defendants had maintained radio contact throughout the chase.

[7] Pierce testified that he did not intend to kill the driver; rather, he simply "intended to neutralize the situation."

Beyond contradiction, Robert's pattern of wanton misdeeds posed a serious and imminent threat of death or other dire irreparable consequences, which necessitated an immediate and decisive counteraction. In addition to the evidence evolved above, the record reflected that, on November 4, 1996, the Criminal Court of Clay County, Tennessee, convicted Robert, following his guilty pleas, on two counts of felony reckless endangerment, one count of felony aggravated assault, and one count of misdemeanor evasion of arrest, stemming from his actions on the morning of April 29, 1995. Furthermore, at deposition on February 18, 1997, Robert confirmed his unstable mental state on the implicated morning; when queried if, during the high speed chase, he had considered that if he continued to flee that a pursuing officer might shoot, Robert replied, "At the time, I didn't care if I lived or died."

automatically excuse a municipality or county from constitutional liability, even where the municipal or county actors were personally absolved by qualified immunity, *if* those agents *in fact* had invaded the plaintiff's constitutional rights. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 166-67 (1993); *Garner v. Memphis Police Dept.*, 8 F.3d 358, 365 (6th Cir. 1993). "An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook*, 199 F.3d at 355 n.4 (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, despite the dismissal of Anderson, Pierce, and Thompson in their personal capacities, a procedurally proper case has been stated against defendant Clay County, Tennessee, by virtue of the plaintiff's specification, in her complaint, that Clay County, as well as the three defendant county agents in their official capacities, infringed her constitutional rights.

Nevertheless, our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right *a fortiori* defeats the claim against the County as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of unconstitutionally excessive force is quite beside the point.") (emphasis the Court's); *Monday v. Oullette*, 118 F.3d 1099, 1105 (6th Cir. 1997). *Ergo*, this court, in its discretionary exercise of pendent party appellate jurisdiction over the

---

*Haverstick Enterprises v. Financial Federal Credit*, 32 F.3d 989, 996 n. 8 (6th Cir. 1994) ("section 1983 actions against municipalities [or counties] carry certain special elements, including proof (1) that the City [or county] pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with `deliberate indifference' towards the constitutional rights of persons affected by the policy or custom.") (brackets added) (*citing City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989)). *See also Collins v. City of Harker Heights*, 503 U.S. 115, 120-24 (1992); *Monell v. Department of Social Services*, 436 U.S. 658, 690-95 (1978).

Hence, defendants Pierce, Anderson, and Thompson, as a matter of law, have committed no Fourth Amendment infraction against Patricia Scott,[20] and therefore are insulated against personal exposure to further litigation under 42 U.S.C. §§ 1983 and 1988.

As previously indicated, the doctrine of qualified immunity safeguards only certain *natural person* defendants in their individual capacities. *E.g. Painter*, 185 F.3d at 566 n.12. By contrast, if the legal requirements of *municipal* or *county* civil rights liability are satisfied,[21] qualified immunity will *not*

---

[20]The plaintiff's alternate contention that the defendant officers somehow offended her constitutional privileges by allegedly initiating the high speed chase is facially misconceived, because she had not been injured in an automotive collision or other fortuitous calamity during the chase. *Cf. County of Sacramento v. Lewis*, 118 S. Ct. 1708 (1998) (concerning the constitutional claim of the estate of a motorcycle passenger who expired in a vehicular mishap during a high speed police chase). Rather, as illustrated herein, the salient issue was whether Pierce was constitutionally authorized, under the circumstances, to shoot at the errant Chevrolet in an attempt to end its endangerment of peace officers and civilians. Whether Robert would have driven the Chevrolet less hazardously if the defendants had not pursued it, which in turn may have mitigated or eliminated the ultimate need for firepower to disable that vehicle, is entirely irrelevant, because Robert in no event possessed any legal justification or excuse for his felonious life-threatening operation of the Chevrolet. As the Seventh Circuit has commented:

> Other than random attacks, all such cases [involving the use of force by criminal justice personnel] begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause and which, if kept within constitutional limits, society praises the officer for causing.

*Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994). *See also Claybrook v. Birchwell*, 199 F.3d 350, 360 n.13 (6th 2000).

[21]Municipalities and counties are "persons" exposed to litigation under sections 1983 and 1988, if the legal requisites are fulfilled. *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997). *See, e.g.,*

---

a medical evacuation helicopter. The rescue aircraft rushed Patricia to Vanderbilt University Hospital, where doctors discovered one bullet lodged inside her skull and a second gunshot imbedded within her right shoulder. Patricia has alleged that she has suffered significant physical damage, including lifelong adverse health consequences, caused by her injuries and by the permanent presence of the bullet in her skull. Patricia Scott states that the bullet cannot be surgically removed.

On November 29, 1995, Patricia instigated her instant complaint, in which she advanced claims under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution,[8] as enforced by 42 U.S.C. §§ 1983 and 1988 (*see* note 1 above), alleging that Pierce, Thompson, and Anderson, in their personal as well as official capacities, had committed, participated in, and/or failed to prevent, the unconstitutional use of excessive force to seize her; and that Sheriff Anderson and the County had failed to properly train and/or supervise the defendant deputies in, and/or devise and implement appropriate policies defining, the lawful

---

[8]The Fourth Amendment posits, in relevant part, that "The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated[.]" U.S. Const. amend. IV.

The Fifth Amendment states, in material part, that "No person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.

The Fourteenth Amendment stipulates, in pertinent segment, that "No state shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.

The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government. *See generally Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). *Ergo*, the instant complainant's citation to the Fifth Amendment Due Process Clause was a nullity, and redundant of her invocation of the Fourteenth Amendment Due Process Clause.

application of force to effect an arrest. Additionally, the plaintiff joined pendent Tennessee constitutional and tort law claims. Patricia has sought $10 million in compensatory damages, an additional $5 million in punitive damages, attorney fees and other litigation expenses, an injunction restricting the defendants' forcible arrest practices, and other appropriate relief.

Following discovery, on June 1, 1998, the four defendants jointly petitioned the district court for a summary judgment under Fed. R. Civ. P. 56 dismissing the plaintiff's federal civil rights claims, as well as the dismissal, for want of federal subject matter jurisdiction, of her pendent Tennessee law claims. Basing their motion on the doctrine of qualified immunity,[9] the defendants argued that the evinced facts, even

---

[9] "Qualified or `good faith' immunity is an affirmative defense that is available to government officials performing discretionary functions." *Rich v. City of Mayfield Hts.*, 955 F.2d 1092, 1094 (6th Cir. 1992). "The ultimate burden of proof is on the *plaintiff* to show that the defendants are *not* entitled to qualified immunity." *Id.* at 1095 (emphases added). The Sixth Circuit, *en banc*, has recently defined the components of the qualified immunity defense:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known. The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*) (quotations omitted; brackets added) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996)).

The insulation from federal civil rights litigation bestowed upon state

---

Accordingly, as a matter of law, defendant Pierce's faulted actions were objectively reasonable, and thus did not violate the Fourth Amendment. Pierce permissibly discharged his professional duty to restore and maintain lawful order through the most effective instrumentality readily available, namely gunfire.[19] Pierce justifiably fired at the fleeing vehicle in order to seize its occupant(s); his actions therefore could not violate the Fourth Amendment rights of any unknown passenger who may have been injured by his actions. Thus, Pierce is entitled to qualified immunity because he did not impinge the plaintiff's constitutional rights.

In turn, the remaining two individual defendants, Anderson and Thompson, are likewise shielded by qualified immunity, because their alleged complicity in Pierce's *lawful* use of deadly coercion patently could not offend the plaintiff's Fourth Amendment protections. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (explaining that an officer can, under certain circumstances, be deemed personally responsible for *unconstitutional* compulsion applied by a fellow agent if that officer, at minimum, either "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.") (citations omitted).

---

inexplicably failed to address it in its judgment denying their qualified immunity motion.

[19] As aptly observed by the *Lewis* Court:

> [T]he police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance.

*County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1720 (1998) (quotations and citations omitted).

actively resisting arrest by eluding representatives of the criminal justice system.[17]

Moreover, an antecedent mandate by this circuit has directly instructed that a constable who fired into the passenger compartment of a moving vehicle, under circumstances remarkably similar to those presently on review, did not violate the Fourth Amendment. In *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992), an automobile sped out of a parking lot and violated a posted stop sign. A patrol cruiser followed that vehicle, which culminated in a chase at speeds reaching 90 miles per hour in residential districts. After the violator had twice attempted to collide with the occupied police vehicle, the squad car cornered the fugitive motorist. However, the culprit accelerated his automobile into the lawman's cruiser, and then drove towards the public street. The officer fired a fatal round at the mobile offender. *Id*. at 344. The Sixth Circuit affirmed summary judgment for the shooter, ruling that his actions were constitutionally reasonable as a matter of law.[18] *Id*. at 346-48.

---

[17]Additionally, the target's persistent high-risk attempts to evade capture created an objectively reasonable suspicion that he may have perpetrated unknown additional serious offenses, thereby reinforcing the weight of the first "reasonableness" factor as supporting Pierce's actions. *See Illinois v. Wardlow*, 120 S. Ct. 673, 675-77 ( 2000).

[18]The *Freland* panel commented:

[U]nder *Graham [v. Connor, supra]*, we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (brackets added).

Despite the instant defendants' timely invocation of *Freland*, and the patent significance of that precedent to the subject action, the trial court

---

when construed most favorably for the claimant, could not, as a matter of law, support the conclusion that any defendant had violated any federal constitutionally-protected right; or, alternatively, assuming *arguendo* that the evidence adverse to the movants was legally sufficient to sustain a hypothetical rational jury's finding of a constitutional infraction, the defendant law enforcers should nevertheless be shielded from personal liability because the offended right was not "clearly established" on April 29, 1995. *See, e.g., Painter v. Robinson*, 185 F.3d 557, 566-67 (6th Cir. 1999).

On July 28, 1998, the trial court denied the subject motion, ruling that material issues of fact remained, for juror resolution, regarding the Fourth Amendment "reasonableness" of the plaintiff's seizure (evolved below); and, if the seizure was unreasonable, whether the precise contributing actions of each individual defendant were objectively unreasonable under the dictates of law which was clearly established on the incident date. On August 24, 1998, the defendants noticed a timely appeal to this reviewing bench.

Ordinarily, a trial forum's rejection of a summary judgment motion is not subject to appellate scrutiny, irrespective of whether that motion had ultimately posed a legal or a factual question. However, a district court's dismissal of a civil rights defendant's summary disposition application *anchored in qualified immunity* will be immediately appealable *if* no predicate finding of an essential material fact remains for jury determination, and thus the lynchpin issue is purely legal. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Johnson v.*

---

governmental personnel by qualified immunity sweeps broadly, affording them "`ample room for mistaken judgments' by protecting `all but the plainly incompetent or those who knowingly violate the law.'" *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998) (*quoting Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). *See also Megenity v. Stenger*, 27 F.3d 1120, 1124 (6th Cir. 1994) ("If we conclude that a reasonable public official would not have been aware that he was committing a [federal civil rights] violation, we then afford immunity.") (brackets added).

*Jones*, 515 U.S. 304, 309-12 (1995). That judicial exception to the governing norm prevails because, if a defendant public servant is personally immunized from monetary liability as a matter of law, he or she is entitled to "an *immunity from suit* rather than a mere defense to [ultimate] liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (italics in original; brackets added).

In the cause *sub judice*, although the adversaries disputed multiple factual issues in the trial court, none of those disputed facts were *essential* to the qualified immunity defense. *See* Fed. R. Civ. P. 56(c) (directing that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law.") (emphases added). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[10] *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986) (emphases in original).

Accordingly, a lower court's determination that defendant state employees were not shielded by qualified immunity, with reference to a set of undisputed operative facts, is a

---

[10]The *Anderson* Court explained:

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (citation omitted).

a hypothetical reasonable officer would not have known that his actions, under the circumstances, were objectively unreasonable. *See Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902-03 (6th Cir. 1998). The testimonial record before the instant review, even when construed most favorably for the plaintiff, overwhelmingly manifested that each of the three *Graham* considerations, highlighted above, militated in support of the incontrovertible conclusion that the defendants' actions were objectively reasonable. First, Robert had committed serious, life-threatening crimes in the presence of the defendant officers. Second, the record proof demonstrated that the fleeing motorist's ongoing felonious misconduct posed an immediate threat to the safety of officers as well as innocent civilians.[16] Third, the vehicular perpetrator was

---

[16]As a general proposition, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11. "'Probable cause' denotes facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999) (quotations and citations omitted).

"Whereas the implicated circumstances comprise factual issues, the ultimate probable cause determination is a mixed issue of law and fact." *Id*. at 570 (citation omitted). Mixed questions of law and fact, and ultimate factual determinations based upon the application of law to subsidiary facts, are subject to plenary ascertainment on appeal. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (*en banc*). Consequently, when the undisputed material facts, or the plaintiff's version of disputed material facts, manifest that a reasonable officer in the defendant's posture would have objectively believed that probable cause existed, the existence of that factor may be determined as a matter of law on summary judgment. *See Painter*, 185 F.3d at 571-72.

In the case in controversy, the testimonial proof, encapsulated herein, would warrant a reasonable officer in Pierce's circumstances to conclude that the culprit posed a serious risk of injury to others, which, standing alone, reconciled his use of force with Fourth Amendment strictures.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, *including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight. . . .*

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (italics and brackets added; citations and quotations omitted).

Although the Fourth Amendment "reasonableness" inquiry is largely fact-driven, summary judgment for defendant public servants founded in qualified immunity is nonetheless appropriate when the undisputed material facts, or the plaintiff's version of disputed material facts, demonstrate that

"final decision" of law,[11] and thus is immediately appealable under 28 U.S.C. § 1291.[12]  *Mitchell*, 472 U.S. at 530. That principle controls even if the trial judge had erroneously concluded that genuine issues of material fact had to be initially resolved by the trier of fact to assess the qualified immunity defense.  *See Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (*en banc*) ("*regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the appeal to the extent it raises questions of law.") (italics in original; ellipse omitted) (*quoting Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996)).

Constitutional tort claims against state actors undergirded by allegations of excessive force exerted to consummate a person's seizure are properly assessed under Fourteenth Amendment due process guarantees if the plaintiff had been a *non-targeted innocent third party* collaterally injured by an assertion of official force; in such instances, the defendant

---

[11]All legal conclusions by lower courts, including those posited in resolving a summary judgment motion anchored in qualified immunity, are scrutinized *de novo*. *E.g., Grider v. Abramson*, 180 F.3d 739, 746 n.7 (6th Cir.), *cert. denied*, 120 S. Ct. 528 (1999); *Brennan v. Township of Northville*, 78 F.3d 1152, 1154, 1156 (6th Cir. 1996).

[12]The Sixth Circuit has recently clarified the factors which inform an appellate court's jurisdiction to review a district court's denial of qualified immunization on summary judgment:

If the defendant does not dispute the facts alleged by the plaintiff for purposes of the appeal, our jurisdiction is clear.  If, instead, the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.  Only if the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a *prima facie* violation of clear constitutional law may we decide that the defendant is entitled to qualified immunity on an interlocutory appeal.

*Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) (citations omitted).

will be liable only if he or she had acted in a manner which "shocks the conscience."[13]  *County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1714-21 (1998); *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).  By contrast, an excessive force claim asserted against public servants by a *premeditated target* of official compulsion designed to consummate a seizure are analyzed under Fourth Amendment "reasonableness" strictures; the plaintiff need prove only that the faulted official action was, under the implicated circumstances, objectively "unreasonable."  *Graham v. Connor*, 490 U.S. 386, 394-97 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-9 (1985); *Claybrook*, 199 F.3d at 359.

In the cause *sub judice*, the district court presumed, *for summary judgment purposes*, that Patricia, as a voluntary cohort of Robert's whom, following the shooting, the defendant officers forcibly removed from the inoperative Chevrolet, and immediately handcuffed, was an intended

---

[13]This rule governs because Fourth Amendment prohibitions against "unreasonable seizures," developed below, cannot apply when the plaintiff had not been purposefully "seized" by state lawmen.  *See Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) ("the Fourth Amendment `reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries *inadvertently inflicted upon an innocent third party* by police officers' use of force while attempting to seize a perpetrator, because the authorities could not `seize' any person other than one who was a deliberate object of their exertion of force.") (emphasis in original) (*citing Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)).

Similarly, Fourteenth Amendment due process bounds, rather than Fourth Amendment "reasonableness" imperatives, confine exertions of state power which *accidentally* impact even the intended subject of an official seizure, such as where an inadvertent collision with a police vehicle injures an arrest target, because the state agents had not volitionally crafted the violence to facilitate an official seizure.  *See County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1715-16 (1998).

target of an official seizure at all times pertinent,[14] thereby triggering the Fourth Amendment's comparatively relaxed "objective unreasonableness" standard of proof (and hence the paradigm most favorable to the plaintiff), as juxtaposed against the more exacting "shocks the conscience" evidentiary requisites of the Fourteenth Amendment.  On appeal, the defendants-appellants have conceded that their summary judgment motion should be assessed under the Fourth Amendment, rather than the Fourteenth Amendment.[15]

The Supreme Court has defined the boundaries of Fourth Amendment "reasonableness" by adoption of an objective "balancing" query:

---

[14]*See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("Whenever an officer restrains the freedom of a person to walk away, he has *seized* that person.") (emphasis added; citation omitted); *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (resolving that an intended arrestee was "seized" by means of a fatal police bullet); *see also Brower v County of Inyo*, 489 U.S. 593, 596 (1989) (ruling that an intended target of an arrest who had been killed by crashing into a police roadblock had been "seized,"and commenting that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control."); *Hill v. California*, 401 U.S. 797, 802-05 (1971) (resolving that the plaintiff, an arrestee who had been the victim of mistaken identity, had been "seized" even though the police had intended to confine another man, because the plaintiff nonetheless had been the object of a willful official detention).

[15]Accordingly, this review need not resolve whether a factual issue would otherwise exist for trial regarding whether, at the time that Pierce discharged his weapon into the moving Chevrolet's passenger compartment, the defendants intended to seize any passenger in that vehicle other than the driver, which in turn would determine which constitutional proviso would control the plaintiff's charges.  *See Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) (explaining that the constitutional tort action of a citizen who had been inadvertently wounded while inside a parked automobile during a police shoot-out with an armed felony suspect in the parking lot must be scrutinized under Fourteenth Amendment standards because the record proof was uncontested that the defendant peace constables had been unaware that anyone had been inside that vehicle and did not intend to seize anyone who might be inside that car).