Constance WELLS, et al., Plaintiffs,

v.

CITY OF DAYTON, et al., Defendants.

No. 3:04cv220.

United States District Court,
S.D. Ohio,
Western Division.

March 8, 2006.

---

Cheryl Renee Washington, Taylor Jones, Jr., Jones & Washington Co., L.P.A., Dayton, OH, for Plaintiffs.

Leonard J. Bazelak, Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH, for Defendants.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SEPARATE TRIALS (DOC. # 8)

RICE, District Judge.

Plaintiffs bring this lawsuit against, *inter alia*, the City of Dayton ("Dayton"); its Chief of Police, William McManus ("McManus"); and two police officers employed by Dayton, Christopher Cornwell ("Cornwell") and Steven McCall ("McCall").[1] Plaintiffs seek compensation for the losses they suffered as a result of Harold L. Wells, Jr. ("Wells"), being shot by Cornwell at the residence of Shawn Robinson ("Robinson") on May 23, 2004.[2] Wells died as a result early the next morning. In their Complaint, Plaintiffs, the Administrator of Wells' estate and his next of kin, set forth, *inter alia*, claims under 42 U.S.C. § 1983 against Dayton, McManus, Cornwell and McCall.

This case is now before the Court on the Defendants' Motion for Separate Trials (Doc. # 8), with which Dayton and McManus request that this Court order separate trials of the Plaintiffs' § 1983 claims against them from their claims under that statute against Cornwell and McCall. The Plaintiff has opposed this motion. *See* Doc. # 12. As a means of analysis, the Court will initially rule upon this request as it relates to the trial of Plaintiffs' claims against Dayton, following which it will turn

---

1. Plaintiffs initially also named Sergeant Gary White of the Dayton Police Department as a Defendant; however, the parties have stipulated to his dismissal. *See* Doc. # 9.

2. The Plaintiffs have joined Robinson as a Defendant in this litigation. Although he testified during his deposition that he has been served in this litigation, Robinson has not filed an answer or otherwise entered an appearance.

to the request as it relates to the trial of Plaintiffs' claims against McManus.

Bifurcation is governed by Rule 42(b) of the Federal Rules of Civil Procedure, which provides:

(b) *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or thirdparty claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

In *Martin v. Heideman,* 106 F.3d 1308 (6th Cir.1997), the Sixth Circuit reiterated that "[b]ifurcation orders are reviewed for abuse of discretion, with the court required to consider the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Id.* at 1311. *See also, In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983).

▮ Plaintiffs can recover from Dayton under § 1983, only if they prove that a policy or practice of that municipality caused the constitutional deprivation allegedly suffered by Wells. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Dayton argues that bifurcation will further convenience and economy, while avoiding the prejudice which could occur if all claims and issues were to be resolved in a single trial.

The Court concludes that separate trials of Plaintiffs' claims against Cornwell and McCall and their claim under *Monell* against Dayton are necessary in order to avoid prejudice. If a single trial were held on all of the claims in this case, evidence offered against Dayton regarding incidents of alleged misconduct by police officers, unrelated to the incident in question in this case but relevant to the question of municipal liability for a policy or practice, would be highly prejudicial to Cornwell and McCall. The questions regarding the liability of those individual Defendants must be decided by the jury *only* on the facts of the particular encounter on which this case is based. That is to say, these individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer, when defending against the allegations of the Plaintiffs as to the incidents that occurred in this case. A jury must be allowed to consider the evidence regarding *this incident,* with its focus on that evidence, unimpaired by a torrent of information concerning the conduct of police officers in other unrelated situations at other times, evidence that has relevance only to the Plaintiffs' claims of *Monell* liability against Dayton.

The Court rejects also Plaintiffs' argument that it should overrule the request for bifurcation, because such an order would be neither convenient nor economical, given that issues relating to the liability of Dayton under *Monell* are inextricably intertwined with those relating to the liability of Cornwell and McCall. According to Plaintiffs, an order of bifurcation would result in two trials in this matter, in which much of the same evidence would be introduced. This Court does not agree. As an initial matter, evidence concerning the existence of a policy or practice would not be admissible in a separate trial against Cornwell and McCall. In addition, it would not be necessary for Plaintiffs to prove that those officers violated Wells' constitutional rights in the separate trial against Dayton. It bears emphasis that any inconvenience or lack of economy which would flow from the necessity of conducting two trials

would pale in comparison to the prejudice which would befall Cornwell and McCall, if Plaintiffs' claims against them were to be resolved in same trial as the Plaintiffs' *Monell* claim against Dayton. Moreover, although it is possible that two trials will be necessary to resolve this litigation, for the reasons set forth below, that possibility is so remote that it does not serve as the basis for denying the instant request for bifurcation.

The first trial will most probably moot the need for a second trial. A finding by the jury in the first trial, during which the Plaintiffs' claims against Cornwell and McCall will be resolved, that those Defendants had not violated Wells' constitutional rights, would resolve Plaintiffs' claims against Dayton. When the jury finds that an officer did not deprive the plaintiff of her constitutional rights, *Monell* liability cannot be imposed upon his governmental employer.[3] *See e.g., Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir.) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)), *cert. denied*, 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). On the other hand, if the first trial were to result in a verdict in favor of the Plaintiffs, and Dayton agreed to pay the amount of that verdict, i.e., to indemnify Cornwell and McCall for the amount of the jury's verdicts, there would be no need for a second trial to resolve the Plaintiffs' *Monell* claim against Dayton, since they are entitled to only one recovery for their damages, which would have been accomplished as a result of the jury's verdict in the first trial and the City's agreement to indemnify. If Dayton were to refuse to indemnify Cornwell and McCall for the amount of the verdict and the Plaintiffs could not secure satisfaction of that verdict from payment by the individual officers, then, of course, a second trial would be necessary.[4]

It is, however, possible that the first trial will not eliminate the need for a second trial. A second trial would be required to resolve Plaintiffs' *Monell* claim against Dayton, if the jury were to find that, although Cornwell and/or McCall violated Wells' constitutional rights, they were protected from liability by qualified immunity. *See Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (holding that the defense of qualified immunity is not available to municipal governments); *Harrill v. Blount County, Tenn.*, 55 F.3d 1123, 1124 (6th Cir.1995) (same). However, in this Court's experience, the possibility that the jury will find both that those Defendants violated Wells' rights and that qualified immunity prevents liability from being imposed upon them is quite remote.

---

3. Under Ohio's statute providing tort immunity to political subdivisions, liability can be imposed on a municipal employer, such as Dayton, for the torts committed by its employees, only in limited circumstances, none of which is implicated in this litigation. *See* Ohio Rev.Code § 2744.02(B). Therefore, since it is unlikely that the Plaintiffs' state law claims against Dayton will survive a motion for summary judgment, the Court has focused upon Plaintiffs' federal law claims when discussing bifurcation. If, however, the Plaintiffs' state law claims against Dayton were to survive a motion for summary judgment, those claims would be resolved during the first trial (that against Cornwell and McCall), since their resolution would not necessitate the introduction of the same type of potentially prejudicial evidence (to the individual officers) as the Plaintiffs' *Monell* claim.

4. Plaintiff cannot recover punitive damages from Dayton on her federal law claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Therefore, there would be no need for a second trial, if Dayton were to refuse to indemnify Cornwell and McCall for an award of punitive damages at the first trial.

Accordingly, the Court concludes that a trial of Plaintiffs' *Monell* claim against Dayton, separate from their claims against Cornwell and McCall, is the preferred method of dealing with the issues involved in this litigation.

Plaintiffs' § 1983 claim against McManus is predicated upon a supervisory liability theory, since they do not allege that McManus was personally involved in the actions upon which their claims are based. The Sixth Circuit has repeatedly held:

> [T]he § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of *respondeat superior.* There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Turner v. City of Taylor,* 412 F.3d 629, 643 (6th Cir.2005) (internal quotation marks and citations omitted). As can be seen, the liability of McManus, unlike that of Dayton, will be based upon his personal involvement in the events giving rise to this litigation. Therefore, there is little risk that Cornwell and McCall will be exposed to the potential for prejudice that resolving § 1983 claims against them and Dayton together would force them to face, if the claims against them are resolved together with those against McManus. In addition, since Plaintiffs' supervisory liability claims against McManus will focus upon his involvement in the events underlying this litigation, resolving those claims at the same time as Plaintiffs' claims against Cornwell and McCall will be economical.

Based upon the foregoing, the Court sustains in part and overrules in part the Defendants' Motion for Separate Trials (Doc. # 8). The Plaintiffs' claims against the individual Defendants (i.e., Cornwell, McCall and McManus) will be resolved in the first trial, with their claims against Dayton under *Monell* being resolved in a second trial, if necessary.