Patricia SMITH, Individually and as Administratrix of the Estate of Brent Robin Smith, Plaintiff–Appellant,

v.

James FRELAND; Peter Schulcz; and the City of Springdale, Ohio, Defendants–Appellees.

Nos. 91–3469, 91–3470.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 21, 1991.

Decided Jan. 6, 1992.

Marc D. Mezibov (argued and briefed), Matthew Brownfield, Sirkin, Pinales, Mezi-

bov & Schwartz, Cincinnati, Ohio, for Patricia Smith.

William R. Ellis, David Alan Caldwell (argued and briefed), Wood & Lamping, Cincinnati, Ohio, for James Freland and City of Springdale.

Robert J. Gehring (briefed), Law Firm of Robert J. Gehring, Cincinnati, Ohio, for Peter Schulcz, III.

Before BOGGS and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Patricia Smith appeals the district court's grant of summary judgment for the defendants in this action, based on 42 U.S.C. § 1983. The case concerns the death of her son, who was shot by a policeman while fleeing in his car after a high-speed chase. She contends that the shooting was an unreasonable seizure violating his fourth amendment rights. Because the district court did not err in holding that the seizure was not unreasonable as a matter of law, we affirm the judgment of the district court.

I

The following facts are essentially undisputed. At approximately 9:28 p.m. on October 31, 1988, Officer Peter Schulcz of the Springdale police department saw a "Monte Carlo-type vehicle" come speeding out of an apartment complex. The car, driven by Brent Robin Smith, ran a stop sign, and Officer Schulcz gave pursuit. Rather than pulling over, Mr. Smith tried to escape, and led Officer Schulcz on a wild chase at speeds in excess of ninety miles per hour. At one point, Mr. Smith backed up in a field at the edge of an asphalt roadway. His car was spinning its tires and throwing up grass and dirt, and Officer Schulcz assumed that he was stuck and began to pull his police cruiser in front of Mr. Smith's car. Suddenly, Mr. Smith's car leaped forward and swerved toward Officer Schulcz's car. Officer Schulcz pulled his car to the right to avoid a collision and again tried to position himself in front of Mr. Smith.

However, Mr. Smith once more swerved toward the police cruiser. Officer Schulcz allowed Mr. Smith to get in front of him, but told the county dispatcher that Mr. Smith was now wanted for assault on a police officer.

By this time, the cars had left Springdale and entered Sharonville, another Cincinnati suburb in the northern part of Hamilton County, Ohio. Janice Gordon, a Sharonville police officer, had heard Officer Schulcz's description of the chase. She placed her car in Mr. Smith's path, attempting to block him. However, she had left room for him to maneuver around her, and he did so, driving past at high speed with Officer Schulcz still in pursuit.

After fleeing Officer Schulcz for approximately 2.6 miles, Mr. Smith pulled onto Woodbine Avenue in Sharonville, a dead-end residential street approximately fifteen to twenty feet wide. At the end of the street, Mr. Smith tried to turn his car around on a lawn. Officer Schulcz, attempting to prevent Mr. Smith from escaping, placed his car as close to Mr. Smith's as possible. Eventually, the cars came nose to nose. A building associated with a local swimming pool was behind Mr. Smith's car, and a fence with a gate was on Mr. Smith's left. Officer Schulcz then got out of his car and moved around its rear, intending to remove Mr. Smith from his car.

Suddenly, Mr. Smith backed up his car, then sped forward and crashed into Officer Schulcz's car. He backed up again and zoomed around the police car, smashing into the fence and gate as he did so. As Mr. Smith's car drove past, Officer Schulcz pulled his gun and fired one shot at it. The bullet entered the passenger side of the car, pierced the passenger seat, then struck Mr. Smith in his right side, killing him. The entire incident, beginning with Officer Schulcz's first sighting of Mr. Smith, lasted about four minutes. The parties were on Woodbine Avenue for approximately sixty-seven seconds.

On August 30, 1989, Patricia Smith, individually and as administratrix of the estate of her son, Mr. Smith, filed a complaint in

the Southern District of Ohio. She sought punitive and compensatory damages, and alleged violations of 42 U.S.C. § 1983 by Officer Schulcz, Acting Springdale Police Chief James Freland, and the City of Springdale. Specifically, she claimed that (1) Officer Schulcz's use of deadly force was excessive and unreasonable; (2) Springdale and Chief Freland had in effect ratified Officer Schulcz's actions by failing to discipline him or take any corrective action with regard to their policies and procedures; and (3) by their actions the defendants had violated Mr. Smith's rights under the fourth, eighth, and fourteenth amendments. She also claimed that they had deprived her of her liberty interest in her relationship with her son. Finally, the complaint alleged state claims under the Ohio wrongful death and survival of actions statutes. Ohio Rev.Code Ann. §§ 2125.01, 2305.21.

On December 7, 1990, Springdale and Chief Freland filed a joint motion for summary judgment. They claimed that a single incident of unconstitutional conduct by a municipal employee is insufficient to impose municipal liability upon them under § 1983, and that state law makes them immune from liability with respect to state law claims. Officer Schulcz subsequently filed a motion for summary judgment, claiming that he should receive qualified immunity because he reasonably believed that Mr. Smith represented a major threat to his safety. On May 9, 1991, the district court held that Officer Schulcz had not deprived Mr. Smith of his constitutional rights, and granted his motion for summary judgment. Since it concluded that Mr. Smith had not suffered any constitutional deprivation, it also dismissed the claims against Springdale and Chief Freland. Having dismissed the federal claims, it concluded that it no longer had jurisdiction over Ms. Smith's state claims. This timely appeal followed.

## II

■ In reviewing grants of summary judgment, we use the same test as used by the district court. *See Equal Employment Opportunity Comm'n v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). As a respondent to a motion for summary judgment, Ms. Smith is required by Fed. R.Civ.P. 56(e) to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ To determine whether Ms. Smith has demonstrated the existence of a genuine issue for trial, we must set forth the legal requirements that govern her claim. To collect damages under § 1983, Ms. Smith must show that Officer Schulcz violated her son's fourth amendment right to be free from unreasonable searches and seizures, which has been applied to states and municipalities by the fourteenth amendment. As the Supreme Court has stated, *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original). The eighth amendment does not apply to this case, because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977).

■ Thus, to survive a motion for summary judgment, Ms. Smith must designate specific facts demonstrating that Officer Schulcz acted unreasonably in shooting her son. In *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985), the Supreme Court addressed the issue of when policemen may reasonably use deadly force. It struck down a state statute that authorized the use of deadly

force against fleeing suspected felons, including those who were unarmed and presented no danger. However, the Court did not forbid all use of deadly force in seizing suspects. Instead, it established the following rule:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

471 U.S. at 11, 105 S.Ct. at 1701. In the proceedings below, the district court held that Officer Schulcz's actions met this standard, even though it decided that "Officer Schulcz was not in any immediate personal danger at the time he discharged his weapon." It concluded that a "reasonable officer in those circumstances would certainly believe that if Mr. Smith continued this escape attempt, he posed a significant threat of physical injury to numerous others." Thus, it determined that Officer Schulcz did not violate Mr. Smith's rights.

On appeal, Ms. Smith claims that the district court overlooked certain issues of material fact in its decision. Specifically, she avers that at the very moment Officer Schulcz shot Mr. Smith, a police roadblock at the end of Woodbine Avenue prevented any escape by Mr. Smith and rendered the use of deadly force completely unnecessary. Moreover, she argues, a reasonable officer could have known about the roadblock when he shot Mr. Smith. To support this argument, Ms. Smith notes that Officer Schulcz first radioed the Hamilton County Communications Center that he was "in pursuit" of Mr. Smith's car soon after he began to give chase. Having done so, he should have known that other officers would come to his aid. Officer Schulcz himself testified that "a pursuit will automatically mean officer needs assistance, and any officers in the vicinity will assist that officer." Officer Gordon supported this testimony, explaining that she did not need to contact him because he knew other officers were aware of his predicament. Next, Ms. Smith notes several eyewitnesses who testified that other police officers were blocking the end of Woodbine

Avenue at the time of the shooting, thus preventing any escape.

Ms. Smith also invokes the *Garner* Court's statement that "[t]he intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." 471 U.S. at 9, 105 S.Ct. at 1700. She contends that the government interest at stake in this case, Mr. Smith's apprehension, could have been accomplished without using deadly force. Mr. Smith was evidently not armed, and any evidence that he used his car to assault Officer Schulcz was disputed. She concludes, therefore, that to hold that Officer Schulcz could use deadly force to apprehend Mr. Smith would mean that any reckless motorist could be subject to such force. Finally, she claims that Officer Schulcz violated Springdale's own policy regarding the use of deadly force. That policy evidently forbids officers to fire at moving vehicles, unless they are acting in self-defense. Further, it bans the firing of shots to apprehend someone suspected of a misdemeanor. Springdale Police Department General Order No. 46.

■ In determining whether Officer Schulcz acted reasonably, we are guided by *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), in which the Supreme Court gave a more complete explanation of how courts should examine § 1983 claims that invoke *Garner*. The Court emphasized that " [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' however, its proper application requires careful attention to the facts and circumstances of each particular case...." 490 U.S. at 396, 109 S.Ct. at 1871–72 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979)). The Court also held that in applying the test, judges must consider the difficulties of modern police work:

> The "reasonableness" of a particular use of force must be judged from the per-

spective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

490 U.S. at 396–97, 109 S.Ct. at 1872. This passage carries great weight in this case, since all parties agree that the events in question happened very quickly. Thus, under *Graham,* we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

Besides considering *Graham,* we note that at least one other court has rejected the idea that a surrounded suspect presents no danger to others. In *Reese v. Anderson,* 926 F.2d 494 (5th Cir.1991), a policeman stopped a car after a high-speed chase. He ordered those inside the car to raise their hands, but one suspect reached below the officer's sight line at least twice. The officer shot and killed the suspect. The plaintiff in *Reese,* like Ms. Smith, argued that the officer's actions were unwarranted because the suspects were surrounded. The Fifth Circuit rejected this argument, holding that the officer could reasonably have believed that the suspect had retrieved a gun. It offered the following reason for its conclusion:

> The fact that the vehicle was "totally surrounded" by police does not change matters; had [the suspect] in fact retrieved a gun from his seat, he could have caused injury or death despite the presence of numerous police officers. Also irrelevant is the fact that [the suspect] was actually unarmed. [The offi-

cer] did not and could not have known this.

926 F.2d at 501.

■ In light of these cases, and after a careful scrutiny of the facts, we are convinced that summary judgment should be granted to Officer Schulcz. After a dramatic chase, Officer Schulcz appeared to have trapped his man at the end of a dark street. Suddenly Mr. Smith freed his car and began speeding down the street. In an instant Officer Schulcz had to decide whether to allow his suspect to escape. He decided to stop him, and no rational jury could say he acted unreasonably. Even if there were a roadblock at the end of Woodbine Avenue, Officer Schulcz could reasonably believe that Mr. Smith could escape the roadblock, as he had escaped several times previously. In any event, Mr. Smith had freed his car from Officer Schulcz's attempted blockade, and was undoubtedly going to escape from Officer Schulcz, if not the entire police force. Had he proceeded unmolested down Woodbine Avenue, he posed a major threat to the officers manning the roadblock. Even unarmed, he was not harmless; a car can be a deadly weapon. *See, e.g., United States v. Sanchez,* 914 F.2d 1355 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991). Finally, rather than confronting the roadblock, he could have stopped his car and entered one of the neighboring houses, hoping to take hostages. Mr. Smith had proven he would do almost anything to avoid capture; Officer Schulcz could certainly assume he would not stop at threatening others.

■ Furthermore, the fact that Officer Schulcz's actions may have violated Springdale's policies regarding police use of force does not require a different result. Under § 1983, the issue is whether Officer Schulcz violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983. To hold that cities with strict policies commit more constitutional

violations than those with lax policies would be an unwarranted extension of the law, as well as a violation of common sense. Ms. Smith's position, if adopted, would encourage all governments to adopt the least restrictive policies possible. While not expressly saying so, the Seventh Circuit has already recognized that city policies do not determine constitutional law. In *Ford v. Childers*, 855 F.2d 1271 (7th Cir.1988) (en banc), the Seventh Circuit held that a police officer acted reasonably in shooting at a fleeing bank robbery suspect after giving the suspect two warnings, even though he could not be certain the suspect was armed. An expert testified that the officer's actions had violated the city's police manual and generally accepted police practices. Rather than considering these local rules, the court limited its attention to whether the officer had violated *Garner*. We believe this is the proper approach, and we adopt it in this case.

### III

■ As noted above, Officer Schulcz originally attempted to defend his actions by claiming to have acted in self defense. However, the district court did not rest its decision on that ground, ruling instead that deadly force was necessary to prevent Mr. Smith's escape and that Mr. Smith posed a significant threat to others. Ms. Smith now contends that this decision placed her at a disadvantage. She claims that she could not properly prepare for this argument, because the focus of discovery was whether Officer Schulcz *himself* was in danger, rather than the presence of danger to others. She cites this court's warning that "summary judgment should not ordinarily be granted before discovery has been completed," and notes that "[t]his principle is particularly strong when constitutional and civil rights claims are at issue." *Tarleton v. Meharry Medical College*, 717 F.2d 1523, 1535 (6th Cir.1983).

This court has recognized the following principles regarding this issue:

> "A court is not confined to the particular propositions of law advanced by the parties on a motion for summary judgment. Once it is determined that there is no genuine issue as to any material fact and that a party is entitled to the benefit of a judgment as a matter of law, judgment should be entered even though the legal principles relied upon by the court may differ from those that have been urged by the litigants."

*Ware v. Trailer Mart, Inc.*, 623 F.2d 1150, 1154 (6th Cir.1980) (quoting 10 Charles Wright, Arthur Miller & Mary Kane, Federal Practice and Procedure, § 2725). As the rest of this opinion makes clear, Mr. Smith's danger to others was self-evident. Asking the district court to require further discovery on the issue would merely introduce useless delay into the proceedings. Furthermore, even if the district court considered the danger to others, rather than to Officer Schulcz, it did not introduce new legal principles to the case. The law governing whether an officer acted reasonably is the same whether the officer sought to protect himself or others.

### IV

■ Because Officer Schulcz acted reasonably, Mr. Smith's rights were not violated. Thus, Ms. Smith has no claim against Springdale or Chief Freland, and we affirm the district court's dismissal of charges against these defendants. Finally, we believe the district court acted properly in dismissing Ms. Smith's state claims. As the Supreme Court has stated, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, the district court's decision is AFFIRMED.