Caraneita BUSH, Personal Representative of the Estate of Franklin Dwayne Williams, Plaintiff,

v.

Kevin WHEELER, Kevin Glenn, and the City of Detroit, a Municipal Corporation, Jointly and Severally, Defendants.

No. 90–72091.

United States District Court,
E.D. Michigan, S.D.

March 10, 1992.

Kenneth N. Hylton, Detroit, Mich., Craig W. Bender, Southfield, Mich., for plaintiff.

David M. Tyler, Dale Gudenau, Ronald Lederman, Southfield, Mich., for defendants.

John Quinn, Detroit, Mich., for defendant Detroit.

GADOLA, District Judge.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Caraneita Bush filed her complaint against defendants Kevin Wheeler, Kevin Glenn and the City of Detroit in Wayne County Circuit Court. Defendants removed the case to this court July 18, 1990, and this court remanded all state law claims July 27, 1990. Defendants filed the instant motion for summary judgment January 15, 1992. Plaintiff filed her response January 28, 1992. With leave of the court, defendants filed their reply February 27, 1992. Also with leave of the court, plaintiff filed a reply February 27, 1992.

## FACTS

This action arises out of the shooting death of Franklin Dwayne Williams. Plaintiff alleges that defendants Wheeler and Glenn fatally shot Williams. Defendants claim that Williams committed suicide.

Williams was a twenty-seven (27) year old black man. On December 17, 1989, at about 3:00 a.m., Williams was driving his car in Detroit when defendants Wheeler and Glenn and Detroit reservist Leon Striegel began pursuing Williams' car. According to defendants, Williams was driving without a license plate or headlights, ran a red light and did not respond to defendants' air horn and other signals to pull over.

After Williams did pull over, defendants Wheeler and Glenn and reservist Striegel surrounded the vehicle with Wheeler at the front of the car. Wheeler pulled his department-approved nine (9) millimeter automatic pistol. Glenn attempted to open the passenger side door while Striegel banged his flashlight on the driver's side window.

Defendants allege that the car began accelerating toward Wheeler while Wheeler yelled at Williams to halt. Defendants further allege that Wheeler believed that Williams was trying to run him over. Additionally, defendants indicate that they observed Williams pull a gun from his jacket and point it toward them. It is at this point that Wheeler fired one shot from his nine (9) millimeter automatic pistol through the windshield of the vehicle, striking Williams in the shoulder.

Defendants approached the car and found Williams dead, with one bullet wound in the shoulder and two bullet wounds in the chest. Defendants state that they found a thirty-eight (.38) caliber handgun, two bullet casings and a suicide note on the seat next to Williams. The two bullets taken from Williams were fired from the thirty-eight (.38) caliber handgun found in the vehicle. The autopsy report indicates suicide as the cause of death. There were also indications that gunshot residue was found on Williams' left hand indicating that Williams had recently fired a gun.

Plaintiff states that the evidence uncovered during discovery shows that Williams did not commit suicide. Plaintiff alleges that defendants shot Williams with the thirty-eight (.38) caliber handgun and placed it in the vehicle to cover-up the homicide. Plaintiff has found a witness who states that he heard five shots. This witness's statement was not made a part of the official police report. Further, plaintiff has obtained statements from Sgt. Susan Richter indicating that Wheeler and Glenn initially failed to inform the investigators that Williams threatened them with a weapon. Richter also was never shown the weapon when making out her report. Further, Williams' fingerprints were never found on the thirty-eight (.38) caliber handgun or the suicide note. Finally, plaintiff has secured the testimony of two experts who state that Williams' injuries were not self-inflicted.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and

precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the non-movant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

## ANALYSIS

In their motion for summary judgment, defendants state that plaintiff's two experts are either not qualified to state their opinions or are mistaken or incomplete in their conclusions. Defendants assert that the opinion of plaintiff's firearm expert, David G. Townshend, is flawed because Mr. Townshend is not an expert in determining whether a shooting is a homicide or a suicide. During his deposition, Mr. Townshend admitted that he could not determine whether the shooting was a homicide or a suicide.[1] Because plaintiff has failed to bolster her expert's credentials or opinion, Mr. Townshend's testimony does not appear to aid in avoiding defendants' motion for summary judgment.

Defendants next assail the credentials and testimony of Dr. Werner Spitz, plaintiff's expert on forensic pathology. Defendants assert that Dr. Spitz's testimony is of no use because Dr. Spitz is unable to determine whether Williams was shot by Wheeler or any other police officer. However, that is not why Dr. Spitz was retained by plaintiff. Dr. Spitz, as a forensic pathologist, was retained by plaintiff to determine in which order the shots were fired and from what direction, not to determine the

---

1. Townshend dep. at 76–77.

identity of the guilty parties. Dr. Spitz was able to testify at his deposition that someone besides Williams fired the two rounds into his chest.[2] It is unnecessary for Dr. Spitz to state by whom the shots were fired.

It is also unnecessary for Dr. Spitz to state that the shots came from the same person, as defendants suggest. Mr. Townshend has indicated that the rounds come from two different weapons. Whether the shots were fired by the same person is irrelevant to the underlying question: whether Williams committed suicide or was murdered by defendants, which murder was subsequently covered-up by defendants. Defendants have certainly called into question the accuracy of Dr. Spitz's conclusions, but this merely raises a factual question to be decided by a jury.

Plaintiff has other evidence that a cover-up was in progress by defendants. Wheeler claims that he shot Williams in self-defense. However, the police report and the deposition testimony of Sgt. Richter indicates that Wheeler stated that he shot Williams while slipping on ice.[3]

Next, plaintiff points out that the thirty-eight (.38) caliber revolver that Williams allegedly shot himself with does not have Williams' fingerprints on it.[4] Defendants state that the fingerprints were merely unusable.[5] Both assertions are supported by documentation. Also, as plaintiff indicates, if Glenn and Wheeler had confiscated a weapon that had been allegedly pointed at them, they would have reported this to the first command officer on the scene, Sgt. Richter.[6]

Additionally, plaintiff offers the testimony of Marcus Hurd, a witness who was walking out of his house at the time of the incident. Hurd has testified at his deposition that he heard five or six shots coming from the scene.[7] This again contradicts defendants' stories.

Plaintiff also points to the gun residue analysis test performed on Williams. Plaintiff asserts that defendants' expert Hayden Dannug has admitted that the test results were contaminated.[8] Defendants dispute this characterization of Mr. Dannug's testimony. However, the deposition of Mr. Dannug reflects a possibility that the value of the test results, which showed residue on Williams' left hand indicating that Williams had recently fired a weapon, may have been compromised. Along this line, Dr. Spitz further testified at his deposition that it is "feasible, but unlikely" that Williams shot himself.[9] Dr. Spitz reached this conclusion based upon the trajectory of the bullets and the fact that the shot was allegedly inflicted by a right-handed person with his left hand.[10]

Further, plaintiff asserts that the suicide note was not written by Williams. The note, like the thirty-eight (.38) revolver, either did not have Williams' fingerprints on it or the fingerprints were not usable. The note was not shown to Williams' mother, Marcella Williams, by the police. When a copy of the note was shown to Ms. Williams by plaintiff's attorneys, Ms. Williams affirmatively stated that this was not her son's handwriting.[11] Also, the alleged suicide note was destroyed in the fingerprinting process. Finally, plaintiff has retained Dr. Antoon A. Leenaars who will testify that the note, even if written by Williams, was not a "suicide note" at all.

2. Spitz dep. at 48.

3. Police Report (Plaintiff's Resp. Ex. 3); Richter dep. at 9–10.

4. Plaintiff's Resp. Ex. 4.

5. Defendants' Reply Ex. B.

6. Richter dep. at 10.

7. Hurd dep. at 25–26. Hurd, a Vietnam veteran who claims to be able to distinguish between a nine (9) millimeter automatic pistol and a thir-ty-eight (.38) caliber handgun, asserts that the shots came from the latter. *Id.* at 26.

8. Plaintiff's resp. at 13.

9. Spitz dep. at 72.

10. *Id.; accord* Townshend dep. at 72–73.

11. Marcella Williams dep. at 42–43.

Plaintiff has raised an inference of misconduct by defendants by a showing of actual and circumstantial evidence. The various depositions taken by plaintiff and defendants show that there exists a genuine issue of material fact surrounding the shooting death of Franklin Dwayne Williams. It is of no legal concern that some of this evidence is circumstantial. The Sixth Circuit recognizes the value of circumstantial evidence in avoiding summary judgment motions. *See Nurse Midwifery Assocs. v. Hibbett,* 918 F.2d 605, 617 (6th Cir.1990); *Barnes v. Gencorp, Inc.,* 896 F.2d 1457, 1469 (6th Cir.1990); *see also Walmsley v. City of Philadelphia,* 872 F.2d 546, 552 (3d Cir.1989) (reversing district court's directed verdict for defendant police officers where plaintiff offered circumstantial evidence to jury).

■ Finally, in their reply brief, defendants assert that Wheeler and Glenn are entitled to qualified immunity. Defendants cite *Smith v. Freland,* 954 F.2d 343 (6th Cir.1992), as authority for granting qualified immunity to police officers who fatally shoot a suspect when that suspect speeds toward the officers in a vehicle. This court agrees that defendants Wheeler and Glenn are entitled to qualified immunity if the officers fatally shot Williams in an attempt to (1) defend or protect themselves or to (2) defend or protect others. However, the theory and circumstantial evidence produced by plaintiff calls into question defendants' assertions of self-defense.

Further, the shot fired by Wheeler through the windshield may indeed have been fired in self-defense. However, the two bullet wounds to Williams' chest were admittedly not fired in self-defense or in the defense of others, no matter who fired those shots. It is these latter shots that caused Williams the greatest injury and greatly if not completely contributed to his demise. Because there is a genuine issue of material fact as to whether defendant Wheeler and Glenn fired the two thirty-eight (.38) caliber shots, and if so, why, qualified immunity will not attach.

## ORDER

For the foregoing reasons, it is hereby ORDERED that defendants' motion for summary judgment is DENIED.

SO ORDERED.