JULIA SMITH GIBBONS, Circuit Judge.
The estate of Harold Lee, Jr., who was accidentally shot and killed following a high-speed police chase, brought a civil rights action against the Elizabethtown Police Department and Officer William Bland in his official and personal capacities. The district court granted summary judgment in favor of the defendants-appellees, and the estate appealed. For the following reasons, we affirm the grant of summary judgment in favor of the defendants-appellees.
I.
On July 3, 2001, Lee asked Randall Babb to drive him from Owensboro, Kentucky to Elizabethtown, Kentucky. Lee was initially driving Babb’s vehicle, but Lee became agitated after getting lost and Babb took over the driving. At some point after the men entered the Elizabeth-town city limits, Officer William Bland of the Elizabethtown Police Department attempted to stop Babb’s vehicle for a traffic violation. The vehicle drove away at a high rate of speed as Bland was approaching Babb’s vehicle on foot.[1] A high-speed chase[2] of the vehicle lasted for eight minutes until the tires of the vehicle struck “stingers” which had been placed in its *461 path by the Kentucky state police.[3] Once the vehicle was stopped, Babb exited the vehicle and began to run away from the scene.
Bland stopped his vehicle parallel to Babb’s vehicle. Lee remained in the passenger’s seat of Babb’s vehicle after Babb exited the vehicle and fled from the scene on foot. Bland rapidly exited his patrol car and approached the passenger side of Babb’s vehicle with his gun drawn and pointed at Lee. Bland did not know whether or not Lee was armed because Lee’s arms and hands were not visible to Bland. Bland gave Lee a verbal command,[4] but Lee did not respond to the command nor did he take any actions indicating that he intended to surrender to the police. Lee was sitting motionless in Babb’s car. Bland reached through the passenger side window with one arm while still holding his gun pointed at Lee with the other arm.[5] As he was reaching through the window, Bland’s gun discharged, killing Lee and severing part of Bland’s hand.[6] The incident occurred in a matter of a few seconds.
Basing jurisdiction on 42 U.S.C. § 1983, Lee’s estate and Tina Clark, the mother of Lee’s two minor children, filed suit on June 26, 2002, against Bland in his official and personal capacities and the Elizabeth-town Police Department asserting that the shooting violated Lee’s federal constitutional rights and Kentucky constitutional rights. The complaint was amended twice to assert causes of action based on various state laws, none of which are at issue in this appeal.
The appellees filed a motion for summary judgment on January 12, 2004. The district court issued a memorandum opinion granting the appellees’ motion for summary judgment on May 24, 2004. A timely notice of appeal was filed on June 15, 2004.
II.
A district court’s grant of summary judgment is reviewed de novo. Little v. BP Exploration & Oil Co., 265 F.3d 357, 361 (6th Cir.2001). The court must “view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party.” Id. Summary judgment is appropriate if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c). For a dispute to be genuine, the evidence must be such that “a reasonable jury could return a verdict for the nonmoving party.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For the fact to be material, it must relate to a disputed matter that “might affect the outcome of the suit.” Id. Whether qualified immunity applies is a question of law reviewed de novo. Flint v. Ky. Dep’t of Corr., 270 F.3d 340, 346 (6th Cir.2001).
*462 Qualified immunity protects government officials from civil liability for actions taken within their official discretion insofar as these actions do not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is not merely a defense to liability; rather, when applicable, qualified immunity protects government officials from lawsuits and, hence, the burdens of litigation. See Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To assert qualified immunity, an official must first demonstrate that she acted within her discretionary authority. See Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir.2000). Once the official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in her position would have understood it was unlawful to engage in the conduct that violated the right. Id. In the present case, there is no dispute that Bland was acting within his authority as a state official, so the burden shifts to the appellants to overcome the qualified immunity defense.
The court’s initial inquiry is whether the facts, “taken in the light most favorable to the party asserting the injury,” establish that the officer’s conduct violated a constitutional right. Saucier, 533 U.S. at 201, 121 S.Ct. 2151. If so, the court then considers whether the right that was violated was clearly established in “light of the specific context of the case, not as a broad general proposition.” Id. The operative question “is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. at 202, 121 S.Ct. 2151. “If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.” Id.
In order to determine whether Bland is entitled to qualified immunity, we must first determine whether Lee’s Fourth Amendment rights were violated. Because the Fourth Amendment protects citizens from unreasonable seizures, excessive force claims are analyzed using the Fourth Amendment “reasonableness” standard. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). “In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.” Id. at 394, 109 S.Ct. 1865. In the instant case there is no dispute that Lee was seized within the meaning of the Fourth Amendment.[7] The remaining issue is whether or not Bland’s actions were reasonable under the circumstances. “Determining the reasonableness of the force used under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the countervailing governmental interests at stake.” Dickerson v. McClellan, 101 F.3d 1151, 1162 (6th Cir.1996) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865) (internal quotation marks and citation omitted). Factors to consider when addressing the reasonableness of a law enforcement officer’s actions include: (1) the severity of the crime involved, (2) the immediacy of the threat to officers and others, and (3) whether the suspect is resisting arrest or attempting to flee. Graham, 490 U.S. at 396, 109 S.Ct. 1865.
*463 “Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.” Id. Furthermore, “[t]he ‘reasonableness’ of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Id. The risks faced by law enforcement professionals must be considered when assessing reasonableness. “The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Id. at 396-97, 109 S.Ct. 1865. “[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances.” Dickerson, 101 F.3d at 1160.
[W]e must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes “reasonable” action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.
Id. at 1163 (quoting Smith v. Freland, 954 F.2d 343, 347 (6th Cir.1992)).
The appellants argue that a reasonable jury could conclude that Bland’s actions were intentional and, therefore, unreasonable. The appellants speculate that a jury “could conclude that Officer Bland was so agitated and angry over the police chase that he intended to hurt Lee.” This assertion is based on appellants’ view that the record establishes that “Bland rushed to stick his gun in Lee’s face without reasonable time for Lee’s compliance and submission to police orders (only two second[s] between car stop and weapon discharge)” and “Bland, with loaded weapon pointed at Lee’s head, attempted to pull Lee through the window despite the fact that Lee did nothing to resist arrest or flee.” As stated by the district court:
There is no dispute that the discharge of Bland’s gun was accidental. Even though [Appellants] attempt to argue that a reasonable jury could conclude otherwise, [Appellants] have presented no evidence to suggest that. Bland testified in his deposition that he did not intend to shoot Lee. And [Appellants’] expert, James Marsh, likewise concluded in his report that Bland unintentionally discharged his gun.
The appellants are required to “go beyond the pleadings and by [their] own affidavits, or by the ‘depositions, answers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.’ ” Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). Appellants have not met that burden with regard to Bland’s intention at the time the weapon discharged. There is no evidence from which a jury could conclude that Bland intentionally discharged his weapon. We therefore focus the reasonableness inquiry on Bland’s actions leading up to the unintentional discharge of the weapon. See Leber v. Smith, 773 F.2d 101, 105 (6th Cir.1985) (“It is undisputed that Smith unintentionally discharged his weapon as he slipped and fell; the question is whether he acted reasonably in drawing his gun.”).
This court has applied a tiered approach in evaluating excessive force cases pursu *464 ant to 42 U.S.C. § 1983. In Dickerson, the court stated that “[fjollowing our precedent and the analysis in Carter [v. Buscher, 973 F.2d 1328 (7th Cir.1992) ], we analyze the § 1983 claims separately in this case.... [T]he violation of the knock and announce rule is conceptually distinct from the excessive force claim.” 101 F.3d at 1162. More relevant to the instant case is Pleasant v. Zamieski, 895 F.2d 272, 276 (6th Cir.1990), in which the court held:
Graham requires us to determine whether Officer Zamieski’s actions in the course of his attempt to arrest Jeffrey Pleasant were objectively reasonable under the circumstances. First, we must determine whether or not Zamieski’s decision to draw his gun at the scene was reasonable. Second, we must determine whether Zamieski’s decision not to return his gun to its holster before trying to prevent Jeffrey Pleasant’s escape was reasonable.
Similar to Pleasant, we must determine whether Bland’s decision to initiate the chase of Babb’s vehicle was reasonable and whether Bland reaching into the passenger’s side of Babb’s vehicle with his weapon drawn and pointed at Lee was reasonable.
With regard to Bland’s initiation of the high-speed pursuit after Babb drove away at high speed, this court has held that engaging in a high-speed pursuit in the course of a traffic stop is objectively reasonable as a matter of law.
[T]he use of high-speed pursuits by police officers is not an unreasonable method of seizing traffic violators.... By engaging in high-speed pursuits, without more, police use absolutely no force.... By activating his blue lights and siren, an officer directs a traffic violator to pull to the side of the road where the traffic violator can expect to be detained for a few minutes and released. When the traffic violator decides to flout that order and flee from the officer, and the officer responds by following the violator, the intrusiveness occasioned by the officer’s conduct is slight.
Galas v. McKee, 801 F.2d 200, 203 (6th Cir.1986). The rationale for allowing police officers to engage in high-speed chases of suspected traffic law violators is obvious: “to strip police officers of the authority to pursue traffic violators would not only severely hamper the effective enforcement of the traffic laws, it would also encourage offenders sought to be stopped for traffic offenses, but guilty of more serious crimes, to flee.” Id. at 204.
The appellants cite no authority contrary to Galas, but rely solely on the testimony of their expert, James Marsh, to argue that a jury could conclude that Bland’s action in initiating the chase was unreasonable. Specifically, appellants argue that “Bland. and the Elizabethtown Police Department should not have initiated a chase of the vehicle Lee was an occupant in given the information known and the risks such a chase posed to Lee, the officers and other citizens.” Actually, Marsh’s conclusion regarding the chase, contained in his preliminary written opinion, was that the chase was “[i]nitially appropriate and only for a reasonable amount of time.” Marsh, however, also stated that Bland should have abandoned the high-speed chase because of the potential danger to the public and officers. Marsh opined that
[a]s Bland prolonged this high speed chase there was a chronological cause and effect relationship which resulted in Lee being fatally wounded. The alternative to continuing the high-speed chase for a non forcible felony was to get the vehicle license plate number, *465 identify the suspect, get a warrant and arrest him at a subsequent time.
Marsh’s opinion is contrary to Galas and does not negate the reasonableness of Bland’s actions as a matter of law.[8]
The appellees rely on Pleasant and Leber to argue that Bland’s act of reaching into Babb’s vehicle to extricate Lee with a weapon drawn and aimed at Lee’s head was reasonable as a matter of law. In Pleasant, a police officer accidentally shot the plaintiff as the plaintiff was attempting to climb over a fence. 895 F.2d at 273. A jury returned a verdict in favor of the police officer. Id. at 274. This court, upholding the jury verdict, held that the officer’s action of drawing his gun was objectively reasonable under the circumstances because the incident occurred at night, the officer arrived while a crime was in progress, and the officer had no idea what type of weapon, if any, the plaintiff had in his possession. Id. at 276. The officer’s failure to return the gun to its holster was likewise found to be reasonable because there was not enough time to reholster the gun once the plaintiff attempted to flee the scene. Id. at 276-77. Although the procedural posture facing the court in Pleasant was review of a jury verdict rather than a grant of summary judgment, the opinion reads as though the court is determining that the officer’s conduct was reasonable as a matter of law.
In Leber, police officers were searching for the plaintiff based on a report from the plaintiffs brother that the plaintiff was missing and was possibly suicidal. 773 F.2d at 102. The police sighted the plaintiff and a high-speed chase ensued, ending when the plaintiff was stopped by a roadblock. Id. An officer, with his gun drawn, ordered the plaintiff to exit the car. Id. The plaintiff did not respond. Id. An additional officer arrived, exited his car and ran to the front of his car with his weapon drawn. Id. As the second officer was moving from the door to the front of the car, he slipped on a patch of ice, accidentally discharging his weapon as he fell. Id. The plaintiff was struck by the bullet which resulted in his being permanently paralyzed below his rib cage. Id. This court found that the officer acted reasonably in drawing his weapon while approaching the plaintiffs vehicle and affirmed the district court’s grant of summary judgment, relying in part on the fact that it was night, that the officer had pursued the plaintiff in a high-speed chase, and that the officers had received a report that the plaintiff was emotionally unstable and possibly suicidal. Id. at 105.
The district court found that Bland faced circumstances similar to those faced by the officers in Pleasant and Leber. Specifically, the district court stated that
[l]ike both the Pleasant and Leber cases, the incident took place late at night. And, as in Leber, Bland and another police officer had been following Babb’s car for several minutes in a high-speed chase ... As in Pleasant, when Bland approached Lee, he could not see Lee’s hands and therefore could not verify whether Lee was armed. And like the suspects in Pleasant and Leber, Lee was not responding to any verbal commands to get out of the car.
The appellants argue that Pleasant and Leber are distinguishable from the instant case and that the district court misapplied the cases. Appellants point out that the plaintiff in Pleasant was shot as he was attempting to flee, forcing the officer to give chase. Lee, in contrast, did not show any signs of resistance as he sat in Babb’s *466 car. With respect to Leber, the appellants argue that “the officer was perhaps justified in drawing his weapon” but “there is no indication that the officer even intended to point it at the plaintiff, let alone at close range while attempting to pull him through a window.” The appellants further argue that the instant case is distinguishable from Leber because “even if it was reasonable for Bland to have a weapon pulled in getting out of his squad car, there is considerable issue as to whether it was reasonable to purposely stick his fully armed [weapon] (i.e. no safety) in Lee’s face while attempting to pull Lee through a car window.”
The only arguably contrary authority cited by the appellants is Johnson v. City of Milwaukee, 41 F.Supp.2d 917 (E.D.Wis.1999). In Johnson, an officer’s firearm accidentally discharged as the officer was pushing the plaintiff against a fence, even though the plaintiff had surrendered to the officer. Id. at 924. The court denied summary judgment in part finding that it was not unreasonable for the officer to draw his weapon, but that the subsequent use of the weapon created a genuine issue of material fact. Id. at 925-26. While Johnson is not controlling authority for this court, appellants are correct that there are many similarities between Johnson and the instant case. One important difference, however, is that the plaintiff in Johnson had clearly surrendered to the officer while Lee had neither surrendered nor indicated that he was unarmed.
Though not perfectly analogous to Pleasant and Leber, the present case is sufficiently similar that we may appropriately derive guidance from those cases. Moreover, considering the record here, there are no genuine issues of fact concerning the reasonableness of the high-speed chase, the reasonableness of Bland’s decision to draw his weapon, or the accidental nature of the shooting.[9]
Ultimately, upon consideration of the three Graham factors — the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was resisting arrest or attempting to flee — we hold that Bland’s actions were reasonable under the Fourth Amendment. Babb and Lee were fleeing or evading the police, a Class D felony in Kentucky, because they wantonly disobeyed a direction from a police officer to stop their vehicle and created “substantial risk of [ ] serious physical injury or death to a[ ] person or property” by leading police officers on a high-speed chase. Ky.Rev.Stat. Ann. § 520.095. Because the crime involved fleeing from law enforcement, the severity of the crime was great. At the time Bland approached Lee, it was unclear whether or not Lee posed an immediate threat to Bland’s safety because Bland could not see Lee’s hands and, therefore, could not determine whether or not Lee was armed. Finally, while Lee was not resisting arrest or attempting to flee, neither was he complying with Bland’s verbal orders. In sum, the Graham factors raise no genuine questions *467 about the reasonableness of Bland’s actions. At the moment of the incident, it was not unreasonable for Bland to perceive that Lee posed a serious threat to his safety. Therefore, Lee’s constitutional rights were not violated and Bland is entitled to qualified immunity.
The dissent views Bland’s actions differently and posits that Bland should have advanced more slowly or retreated to a more distant position or waited for a response from Lee. As discussed above, the short answer to the dissent’s point is that the Supreme Court has specifically rejected this “wisdom of hindsight” approach that second-guesses an officer’s on-the-scene decisions. See Graham, 490 U.S. at 396, 109 S.Ct. 1865.
Furthermore, even if Bland’s actions had violated Lee’s Fourth Amendment rights, the right in question was not clearly established so as to preclude the application of qualified immunity. The cases cited by the parties demonstrate that “this area is one in which the result depends very much on the facts of each case.... The cases by no means ‘clearly establish’ that [Bland’s] conduct violated the Fourth Amendment.” Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 600, 160 L.Ed.2d 583 (2004). Because “the law did not put [Bland] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.” Saucier, 533 U.S. at 202, 121 S.Ct. 2151.
III.
For the foregoing reasons, we AFFIRM the judgment of the district court.

. Babb testified that Lee panicked when he saw the police lights because he had placed "some Sudafed tab or ... some dope in the trunk,” and that Lee, from the passenger’s seat, changed the gear shift from park to the drive position and hit the gas pedal himself telling Babb to “get out of here.” A significant number of pseudoephedrine tablets (3,456) and twenty-seven lithium batteries were discovered during an inventory of the vehicle.

. Babb testified that he drove his vehicle up to 100 miles per hour during the chase.

. The initial stop and the chase were captured on video by the video camera in Bland’s patrol car.

. Bland claims the command was "get your hands up” or something similar.

. Appellees state that "Bland attempted to reach through the passenger side window to detain Lee.”

. A video camera in Officer Rob Green's patrol car captured Bland’s exit from his vehicle and his approach to Babb’s vehicle. The videotape from Green’s car does not show Lee, the window of the Babb vehicle, or Bland's exact action in reaching into the window.

. The appellants devote several pages of their brief to the issue of whether a seizure occurred. However, the appellees concede that a seizure occurred. Therefore, this step of the analysis requires no further discussion.

. We note that, despite Marsh’s opinion, any causal relationship between the high-speed pursuit and Lee’s death is extremely attenuated.

. We do not address the appellants' argument that Bland violated police procedure when he left his covered position to approach Babb's vehicle. The Elizabethtown Police Chief, Rueben Gardner, testified that Bland's failure to maintain cover put him at risk and that Bland received counseling for failing to maintain a covered position. As appellees point out, however, "[w]hether or not Officer Bland violated a police policy is irrelevant for purposes of the claim pursuant to 42 U.S.C. 1983” because the policy is in place to protect police officers and the issue is whether there was a violation of constitutional rights, not of police policy or procedure. "Under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force.” Smith, 954 F.2d at 347.