BOGGS, Chief Judge,
concurring in the judgment.
Although I agree that there are triable issues of fact material to the question of Officer Passinault’s qualified immunity, and thus that the district court erred in granting summary judgment to him on this basis, I write separately because I consider the range of material disputes to be considerably narrower than does the majority. I fully agree with the majority’s analysis of Officer Jenkins’s qualified immunity.
I
The court’s opinion appears to concede that, at most, Officer Passinault might have been entitled to qualified immunity if he “had fired a single shot as [Murray’s] truck came at him.” Maj. Op. at 344. It concludes, however, that his subsequent shots can only be evaluated for reasonableness after answering the (disputed) factual question whether he, his partner, or the general public were in fact in danger. But this question is, as a matter of law, immaterial to the qualified immunity analysis: we look not to whether, in retrospect, Murray presented an actual danger, but whether, in the context of unfolding events, Officer Passinault could have reasonably perceived a danger. See Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In this light, the factual disputes concerning, e.g., what Murray’s intentions were when he started his truck in the direction of the officers; how many times Passinault ordered Murray to stop; and whether Officer Jenkins was in fact in the direct path of the truck and in danger of being struck, are all irrelevant.
There is no dispute, as the court acknowledges, Maj. Op. at 341, that Murray’s truck passed within eight feet of Passinault, in a confined space. However, there is also undisputed forensic evidence of tire marks on the scene, which, according to the state police crash reconstruction, “indicated that the vehicle was being rapidly accelerated as it entered the parking lot from the grass area. The tire marks showed distinct evidence that the rear tires were spinning because of heavy acceleration. The acceleration continued for *349 approximately 35' where the vehicle began to lose control as it rotated in a counter clockwise direction.” JA 111-12. Whatever the actual danger Murray presented, the court’s assertion that “the officers lacked probable cause to believe that Murray ... posed a threat to anyone,” Maj. Op. at 344, is inconsistent with the undisputed fact that, while approaching Passinault within eight feet, Murray was accelerating enough to cause his tires to spin and to lose control of his truck.[2] And there appears to be no dispute that Officer Jenkins was further along the general path of Murray’s truck: again, regardless of whether the truck would have actually struck Jenkins and whether Jenkins at the time perceived a likelihood of danger to himself, we cannot say that no reasonable officer in Passinault’s circumstances could make the split-second judgment that a nearby fellow officer was in danger of serious injury.
The court emphasizes Murray-Ruhl’s allegation that Passinault did not in fact fear for his own safety or that of Jenkins. Maj. Op. at 344, 345. Again, though this may be a factual matter in dispute, it is not material to the question of qualified immunity, which is concerned only with the objective reasonableness of the officer’s actions, and not with his subjective state of mind. See Harlow v. Fitzgerald, 457 U.S. at 817-18, 102 S.Ct. 2727 (“[Bjare allegations of malice should not suffice” to overcome qualified immunity where the officer’s actions were objectively reasonable.); Smith v. Cupp, 430 F.3d 766, 771 n. 1 (6th Cir.2005) (“An officer’s evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force.”) (citing United States v. Robinson, 414 U.S. 218, 235-36, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).
Similarly, the court appears to conclude that Murray-Ruhl’s assertion that Murray *350 traveled toward the officers because, with his truck being otherwise blocked in, it was his only option, constitutes a material dispute of fact. Maj. Op. at 345. On the contrary, in addition to being wrong as a matter of logic (surely Murray had the option of staying put or submitting to the officers), the subjective intent of the victim—unavailable to the officers who must make a split-second judgment—is irrelevant to the question whether his actions gave rise to a reasonable perception of danger.
Murray-Ruhl’s assertions that Murray did not in fact endanger the officers or anyone else, and that Passinault did not in fact believe he or Jenkins were in danger, are not disputes material to the question of qualified immunity. If they were, any plaintiff in an excessive use of force claim could defeat summary judgment on qualified immunity grounds simply by asserting as a fact that the defendant did not have a requisite reasonable state of mind, or that the victim, in hindsight, did not in fact present a danger. On the contrary, the question of qualified immunity is a question of law that depends only on objective reasonableness, not on actual danger or subjective state of mind. See Barrett v. Steubenville City Schs., 388 F.3d 967, 970 (6th Cir.2004). Accordingly, Passinault’s use of force while Murray was approaching him and was moving in the vicinity of where Officer Jenkins was plausibly located should be protected by qualified immunity.
There do, however, remain material disputes of fact. The plaintiff asserts that the shot that killed Murray was fired well after his truck had passed both Passinault and Jenkins, when the truck was turning onto a public road. At this point in the unfolding events, Passinault presumably could not have had a reasonable belief that he or Jenkins continued to be in danger, and his claim of qualified immunity hinges on whether a reasonable officer under the circumstances would have perceived Murray as a likely danger to members of the public or other officers who might be arriving on the scene. Although our cases have affirmed grants of qualified immunity on this basis, even after the danger to the officers themselves had passed, the reasonableness in such a context depends on whether the behavior of the victim had been egregious enough to support a reasonable belief that he constituted a continued threat to others.
Thus, in Smith v. Freland, 954 F.2d 343 (6th Cir.1992), the victim, by engaging in a high-speed chase and crashing his vehicle into a police patrol car, had shown himself dangerous enough to support such a reasonable belief. In Scott v. Clay County, 205 F.3d 867 (6th Cir.2000), the fleeing victim had patently expressed a willingness to endanger bystanders as well as police, and after crashing into a guard rail was heading toward a highway when the officer used deadly force. Id. at 872-73. And in Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), the Supreme Court upheld a grant of qualified immunity for an officer who shot a suspect who had been involved in a fight, fled to a Jeep when the officer attempted to intervene, and, despite the officer’s attempt to reach into the vehicle to secure the keys, was able to start the engine and begin moving forward. Although the officer was to the side of the vehicle and thus not herself in any danger, there was reason to believe the victim had a gun in the vehicle, and she claimed to be “fearful for the other officers on foot who [she] believed were in the immediate area, [and] for the occupied vehicles in [the victim’s] path and for any other citizens who might be in the area.” Id. at 197, 125 S.Ct. 596 (internal quotation marks and citations omitted).
On the other hand, we have refused to find qualified immunity in somewhat analo *351 gous situations, but where the actions of the victim did not give rise to a reasonable belief that his flight presented a risk of harm to others in the area. In Smith v. Cupp, the victim had been arrested for making harassing telephone calls, and was in the back of the officer’s running patrol car while the officer spoke with a wrecker driver who had arrived to impound the victim’s car. The victim used this opportunity to move to the driver’s seat of the patrol car and attempt to flee. We observed that, whereas in Freland and Scott the victims had clearly displayed their willingness to endanger the lives of bystanders during an extended interaction with the police, the victim in that case had not indisputably done so, precluding qualified immunity on summary judgment.
The facts in this case to fall into the area between Cupp on the one hand and Freland, Scott, and Brosseau on the other. While Murray does not appear, on anyone’s version of the facts, to have been as clear a danger as the victims in the latter cases (or at least Freland and Scott), neither does he appear to have been as unthreatening as the victim in Cupp, insofar as Murray’s actions did, at the very least, give rise to a reasonable fear that he was a danger to the lives of the officers on the scene, something the victim in Cupp never did. Thus, the question whether Passinault was reasonable in continuing to fire on Murray’s truck out of fear for the safety of others in the area depends largely on whether Murray’s behavior up to that point gave rise to a reasonable belief that he presented the requisite level of danger. This, in turn, depends on the answers to a number of factual questions in dispute, such as how fast, and how recklessly, Murray had been traveling, both when he was in the vicinity of the officers and when he had passed them and was heading into the public roadway; how much time had elapsed between his endangerment of the officers and his entry into the public roadway; and what basis, if any, might have supported a belief that others were likely to be in the path of danger.[3]
In sum, though I agree with the courts’s reversal of summary judgement in favor of Officer Passinault, I would hold that the material factual disputes necessary to resolve the question of his qualified immunity are considerably narrower than suggested by the opinion, and, in particular, questions about the actual danger Murray posed, or the state of mind of Officer Passinault and Murray himself, are irrelevant to its resolution.

. The court states that the "record fails to establish the officer’s precise location when the truck left tire marks on the pavement,” and that "it is possible, based on the evidence in the record, that the truck did not begin to lose control and rotate until Murray turned the wheel in order to avoid hitting Passinault.” (Maj. Op. at 340 n. 1). The relevance of the first statement appears to be belied by the record: the forensic report, which Murray-Ruhl offers no basis to doubt, indicates that, as quoted above, Murray’s truck’s tires were spinning, and that the truck "rotated”— not swerved—in a counterclockwise direction when it was near Passinault. After momentarily straightening out, it "started to yaw in a clockwise direction.” The conclusion that Murray was out of control in close proximity to Passinault does not depend in any way on knowing the latter’s precise location, given that his general location—in a relatively bounded area—is undisputed.
The Supreme Court has recently reminded us that, in the context of summary judgment, not all factual disputes—even material ones— are "genuine,” where a bare assertion by the non-moving party is "so utterly discredited by the record that no reasonable jury could have believed him.” Scott v. Harris,-U.S. -, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). Thus, however many times MurrayRuhl asserts as a fact that there was no basis for Passinault to be in fear of serious injury, the record indicates unambiguously that Murray's truck passed within eight feet of Passinault (at a point where Passinault's retreat was blocked by the pole bam), that it was being accelerated rapidly enough to cause its tires to spin, and that it was fishtailing. Murray-Ruhl does not dispute with any specificity the validity of these forensic findings. And under those conditions—a car at least partially out of control, heading in his direction, coming within eight feet—it was objectively reasonable for Passinault to fear for his safety-
The second assertion is, as discussed below, simply irrelevant to the qualified immunity analysis. Murray’s actual intentions are not the object of our inquiry: even if we credit the unsupported supposition that Murray was in fact virtuously attempting to avoid the officer, the only relevant question is whether a reasonable officer under the circumstances could have perceived a likelihood of serious injury.

. The court, in its discussion of Freland, Scott, and Cupp, suggests that in this case “there is a question regarding whether anyone’s life was endangered by Murray as he attempted to flee in his truck.” Maj. Op. at 346. Again, this is misdirected: the question is not whether anyone was in fact endangered, but whether an officer in Passinault's shoes could have reasonably perceived such endangerment.